## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

CALVIN LEWIS JR.,          )
          **Plaintiff,**      )
              )
**v.**                 )      **Docket No: 1:21-CV-00224-GZS**
              )
**T-MOBILE USA, INC.**    )
          **Defendant.**    )

## DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

**NOW COMES** Defendant, T-Mobile USA, Inc. ("T-Mobile" or "Defendant"), by and through the undersigned counsel, and hereby submits this Motion for Summary Judgment and Incorporated Memorandum of Law in support of its position that at no time during his employment did Mr. Lewis experience a violation of his rights under the Americans with Disabilities Act ("ADA") and accordingly, judgment in Defendant's favor is appropriate.

## INTRODUCTION

Plaintiff was employed with T-Mobile as a Coach Team of Experts ("TEX")—overseeing and "coaching" call-center employees who would field calls from T-Mobile customers. Between June 2019 and June 2020, Plaintiff requested several paid and unpaid leaves of absence and workplace accommodations based on health conditions. T-Mobile attempted to work collaboratively with Plaintiff and his healthcare providers to provide him with a work environment where he could effectively perform his job. While several of Plaintiff's requests were granted immediately, some requests submitted by Plaintiff and his healthcare providers were contradictory and some appeared to have been completed by Mr. Lewis himself. In these instances, T-Mobile sought clarification from Plaintiff and his providers and made every effort to engage in the interactive process required by the ADA—despite Plaintiff's resistance.

1

As a result of a reduction in force, caused by the merger between T-Mobile and Sprint, Plaintiff was ultimately terminated.  Plaintiff filed suit and his remaining claims allege violation of the ADA.  Mr. Lewis is not entitled to relief under any of his theories, as no violation of the ADA occurred.  Accordingly, the Court should grant summary judgment T-Mobile's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Lewis was employed by T-Mobile as a Coach TEX. (Def. Statement of Material Fact ("DSOMF") ¶¶1-2.) The Coach TEX job description provides physical attendance at the T-Mobile Call Center is a "specific physical requirement [] of the job."  (DSOMF ¶3.)  T-Mobile's expectation is that all Coach TEXs will be on-site to support their teams during work hours. (DSOMF ¶4.)  A Coach TEX's "Main Responsibility" is to "motivate and inspire their team" by being leaders, who "demonstrate strong interpersonal, time management, and multi-tasking skills" and "are responsible for building effective working relationships" including "collaboration with other coaches."  (DSOMF ¶7.)

TEX Coaches are required to spend more than 50% of their time interacting in-person: approximately 25% of a coach's time is dedicated to "providing effective feedback, coaching, and supporting" team members; 10% is spent "provid[ing] meaningful career and professional development for assigned experts; coach[ing] and develop[ing] experts, including inspection and observation of expected behaviors and outcomes; actively engag[ing] in day-to-day activities in the pod and being a trusted resources for experts through in-the-game coaching;" and 20% is spend "[c]oordinating, cooperat[ing], and collaborat[ing] with other coaches."  (DSOMF ¶8.)

On June 21, 2019, Mr. Lewis requested a continuous leave of absence for Post-Traumatic Stress Disorder ("PTSD") until July 11, 2019; T-Mobile granted this request. (DSOMF ¶11.)  T-Mobile provides individuals with access to short-term disability ("STD") benefits in the form of

partial income replacement for an employee's own serious health condition; application for the benefit occurs during the leave with a process through Broadspire and claim decisions are evaluated based on applicable laws and plan provisions. (DSOMF ¶12.) Under T-Mobile's STD Plan, "Total Disability or Totally Disabled" means an employee is prevented by injury, sickness, mental illness, substance abuse, or pregnancy, from performing the essential duties of the employee's occupation. (DSOMF ¶13.) Mr. Lewis's healthcare provider completed the application for STD benefits on July 23, 2019. (DSOMF ¶14.) The submitted STD application provided that Mr. Lewis had not been directed by a healthcare provider to stop working. (DSOMF ¶15.) Broadspire concluded after review of Mr. Lewis's claim that there "was a lack of clinical evidence to support [Mr. Lewis's] inability to perform the essential duties of [his] occupation." (DSOMF ¶16.)  Mr. Lewis is unaware of other employees with PTSD having been granted paid STD. (DSOMF ¶17.) Mr. Lewis' understanding of why he did not qualify for payment was "related to the paperwork that was submitted by [Mr. Lewis's] therapist"; and he "did not really feel confident in the therapist that [he] was going to at the time," as he didn't feel they had his best interest in mind. (DSOMF ¶18.) Other than the therapist notes that Mr. Lewis disagreed with, he did not submit any other documents in support of his STD payment request in July 2019. (DSOMF ¶19.)

On December 10, 2019, Mr. Lewis' healthcare provider, Todd MacFarlane, approved him to return to work; he returned to work, experienced a panic attack and had to leave work. (DSOMF ¶¶24, 25.)   Mr. Lewis did not return to work after his December 18, 2019 panic attack. (DSOMF ¶26.)

On December 31, 2019, Mr. Lewis' healthcare provider, Roberta Shaw, submitted paperwork seeking intermittent leave for Mr. Lewis.  (DSOMF ¶27.)  In the paperwork Ms. Shaw

checked "yes" to the following impairments limiting Mr. Lewis' performance of his duties: concentration, interacting with others, sleeping, eating, breathing, digestive.  (DSOMF ¶28.) When asked to identify which essential job functions Mr. Lewis was unable to perform *without* an accommodation Ms. Shaw wrote "coaching, trainings, payroll, self + group training, chair meetings" and explained he could not perform these functions "because of severe anxiety and times of PTSD."  (DSOMF ¶29.)  Ms. Shaw further indicated that if T-Mobile was unable to accommodate all or some of the requested intermittent time away from work, that a continuous leave of absence would enable Mr. Lewis to return to work and perform his essential job functions. (DSOMF ¶30.)

On January 15, 2020, Mr. Lewis made a request for a workplace accommodation. (DSOMF ¶31.)  T-Mobile does not provide temporary accommodations while working through the workplace accommodation process. (DSOMF ¶32.) Mr. Lewis wanted to complete training modules at home as opposed to at work. (DSOMF ¶33.)  In response to this request, Melysa Miles, T-Mobile's Accommodation Manager, notified Mr. Lewis that he could complete these trainings outside of scheduled work since he was an exempt employee, but that it wasn't a reasonable accommodation for him to "work from home to complete trainings" when he otherwise needed to be onsite to coach his team. (DSOMF ¶34.)  Human Resources ("HR") explained that these training modules were not required for Mr. Lewis to return to work. (DSOMF ¶37.) T-Mobile only requires an employee to re-train if they are on leave for one year or more; Mr. Lewis was only on leave for six months. (DSOMF ¶¶36, 38.)  On January 22, 2020, Melysa Miles and Karen Estes in T-Mobile's Human Resources Department met with Mr. Lewis and asked him to clarify what he was seeking for an accommodation (as he had not returned to work following the January 15 meeting)

to which Mr. Lewis replied that he was a veteran who had a disability and wanted to know what T-Mobile was going to do for him. (DSOMF ¶75.)

On January 23, 2020, Ms. Shaw provided T-Mobile with another document titled "Cognitive & Behavior Capacities Form" ("the Form"). (DSOMF ¶49.)  The Form provided that Mr. Lewis had a temporary impairment which restricted his ability to: (1) effectively learn and master information in a classroom setting and from on-the-job training; (2) think critically and make sound decisions; (3) maintain emotional control and organization under stress; and (4) maintain socially-appropriate effect, temperament and behavior. (DSOMF ¶50.)  In explaining these limitations Ms. Shaw provided:

> Under learn & process answers no are because of toxic work environment under use appropriate behavior for the work environment answers no are because of feelings of discrimenizing [sic] being discriminized [sic] against myself [sic] by supervisor and HR and having an ongoing investigation of discrimizing [sic] against them.

(DSOMF ¶51.)  In Ms. Shaw's Health Care Provider Questionnaire, in response to the question of what accommodations that would enable Mr. Lewis to perform job functions, she noted "only do training on site, reassignment to different location, or work mostly at home." (DSOMF ¶52.) To further understand Mr. Lewis's limitations, Ms. Shaw provided the following responses [in italics] to T-Mobile's questions as to job functions:

> 12. Would the employee performing any of the job functions listed in the job description result in a direct safety or health threat to this employee or other people (co-workers, customers, members of the general public, etc.)? YES _x_          NO___
>     If yes, please describe: *On 12-18-19 suffered severe panic attack confirmed by physician*
> (a) Which job function(s) would pose such a threat: *training, coaching & development*
> (b) The direct safety or health threat posed and severity of the threat: *loss of consciousness, disorientation, panic, ptsd, flare up*
> (c) The duration of the safety or health threat: *from 1-3-20 to 2-17-20*
> (d) Whether the safety or health threat posed is imminent: yes

(e) Any accommodation that would eliminate the direct safety or health threat, or reduce it to an acceptable level: *work from home temporarily*

(f) Whether the above opinions are based on current, objectively verifiable information about the risks associated with the employee's impairment: *yes.*

(DSOMF ⁋53.) Mr. Lewis agreed with 99 percent of what Ms. Shaw submitted, but felt that Ms. Shaw's statement that he should work mostly from home but do training onsite was contradictory. (DSOMF ⁋56.)  Mr. Lewis never attempted to clarify the contradiction.  (DSOMF ⁋57.)

Questioning the authenticity of Mr. Lewis's documents, on January 29, 2020, Ms. Melysa Miles sent a request to Ms. Shaw asking her to verify the authenticity of the documents. (DSOMF ⁋58.) On January 30, 2020, Ms. Shaw responded verifying the documents' authenticity. (DSOMF ⁋59.)  On March 5, 2020, Ms. Shaw submitted an attending physician statement to Broadspire in support of Mr. Lewis' need for a leave of absence, noting Mr. Lewis "cannot perform job as it has been, human rights violated" and that he has been advised not to return to work.  (DSOMF ⁋66.)

T-Mobile placed Plaintiff on an unpaid leave of absence in February 2020 to await determination by an independent medical exam as to whether he could perform the essential functions of his position. (DSOMF ⁋63.)  T-Mobile ended up moving it's call center employees to a remote environment as a result of the COVID-19 pandemic and on April 10, 2020, Mr. Lewis was permitted to work remotely. (DSOMF ⁋67.) There was subsequently a merger between T-Mobile and Sprint that resulted in a reduction in force in which Plaintiff was terminated. (DSOMF ⁋⁋69, 70.)

Plaintiff commenced this action on August 9, 2021, after a finding of no reasonable grounds by the Maine Human Rights Commission. On February 14, 2022, this Court partially granted Defendant's Motion to Dismiss and dismissed Plaintiff's age discrimination claim. Plaintiff's remaining claims are limited to alleged ADA violations. Discovery is closed.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kendrick v. Me. Med. Ctr.*, 547 F. Supp.3d 87, 92 (D. Me. 2021) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute is 'one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.'" *Id.* (quoting *Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 53 (1st Cir. 2019)). "A fact is 'material' if 'its existence or nonexistence has the potential to change the outcome of the suit.'" *Id.* (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)). After the moving party has made its preliminary showing, the nonmoving party has the burden of "produc[ing] specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Id.* (quotations omitted). Although courts view the evidence in the light most favorable to the nonmoving party, "[m]ere allegations, or conjecture unsupported in the record, are insufficient" to preclude summary judgment. *Id.* (quoting *Barros-Villahermosa v. United States*, 642 F.3d 56, 58 (1st Cir. 2011)).

## ARGUMENT

The Complaint sets forth five situations which Plaintiff alleges amount to evidence of violation of the ADA. Specifically, Mr. Lewis alleges he was discriminated against: (1) in July 2019 when his STD insurance payment application was denied; (2) in some unknown way in November 2019; (3) in January 2020 when denied a reasonable accommodation in the form of remote work; (4) in February 2020 when T-Mobile placed him on an unpaid leave of absence pursuant to his healthcare provider's recommendation; and (5) in July 2020 when terminated. As

set forth below, viewing the facts in a light most favorable to Plaintiff, he remains unable to substantiate his claims and Defendant is entitled to judgment in its favor.

**A.  Denial of Plaintiff's STD wage replacement application did not violate the ADA.**

Plaintiff alleges that in July 2019, he applied for STD payments and his application was denied.  It is his position that this denial was discriminatory and based on his alleged disability. Judgment in Defendant's favor is appropriate as to this claim as Plaintiff has failed to present any evidence that: (1) his application entitled him to receive STD payments under the STD Plan; or (2) his disability was an element of the determination that he was not entitled to wage replacement benefits.

To prevail on an alleged violation of the ADA, the plaintiff must establish by a preponderance of the evidence that "(1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) he was subject to an adverse employment action based in whole or in part on his disability."  *Morissette v. Cote Corp.*, 190 F. Supp. 3d 193, 201 (D. Me. 2016).  To prove this, the plaintiff may "either present direct evidence of discrimination or prove discrimination indirectly with circumstantial evidence 'by using the prima facie case and burden shifting methods that originated in *McDonnell Douglas . . . .*'"  *Id.* (quoting *Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011)).

If we presume, for purposes of summary judgment only, Plaintiff can make out a prima-facie case under *McDonnell Douglas,* Defendant has presented a legitimate non-discriminatory reason for the denial of benefits, which Plaintiff is unable to rebut.  Specifically, Plaintiff was denied STD wage replacement because his healthcare provider's submission did not substantiate the need for a medical leave, as it stated that he had not been directed to stop working.

(DSOMF ⁋16.) In order to be classified as disabled for purposes of receipt of STD wage replacement benefits, T-Mobile's STD Plan requires the employee's application evidence that they are "prevented by injury, sickness, mental illness, substance abuse, or pregnancy, from performing the essential duties of the employee's occupation." (DSOMF ⁋13.)  Broadspire (on T-Mobile's behalf) concluded, after reviewing Mr. Lewis's claim, that there "was a lack of clinical evidence to support [Mr. Lewis's] inability to perform the essential duties of [his] occupation." (DSOMF ⁋16.) Mr. Lewis admitted during his deposition that his understanding of why he did not qualify for payment was "related to the paperwork that was submitted by [Mr. Lewis's] therapist." (DSOMF ⁋18.) Mr. Lewis disagreed with his therapist's application stating he "did not really feel confident in the therapist that [he] was going to at the time.  [He didn't] feel like that they really had [his] best interest in mind or that they had a good understanding of what [his] problem was." (DSOMF ⁋18.) Other than the therapist notes (which Mr. Lewis now claims he disagrees with), he did not submit any other documents in support of his STD application in July 2019. (DSOMF ⁋19.) Plaintiff's disagreement, however, is insufficient, to rebut the appropriateness of this determination or to evidence violation of the ADA.  During his deposition, when asked about discrimination in July 2019, Plaintiff responded he  "applied for a leave of absence, and . . . was given the leave of absence without pay."  (DSOMF ⁋20.)  Plaintiff is unable to identify any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" concerning the reason for his application's denial.  *See Morissette,* 190 F. Supp. 2d at 208.

Additionally, Plaintiff is unable to evidence a comparator who was treated more favorably than he was. *See Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 62 (1st Cir. 2020) (employee "claiming differential treatment must show" that comparators "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

the employer's treatment of them for it."). When pressed as to other employees who had been granted a paid leave who have PTSD, Mr. Lewis responded he didn't have any names of individuals. (DSOMF ¶17.) Additionally, Plaintiff has not presented any evidence of a comparator whose healthcare provider did not advise them to cease working, but was still entitled to STD payments. As there is no comparator evidence or facts to suggest Defendant's legitimate non-discriminatory reason for denial of STD payment was pretextual, the Court should enter judgment in Defendant's favor as to Plaintiff's claimed ADA violation based on the denial of his application for STD wage supplement.

**B. No violation of the ADA occurred in November 2019.**

Plaintiff's Complaint alleges that T-Mobile discriminated against him in November 2019, without specifying any discriminatory conduct. (Compl. ¶ III, B.) During his deposition, Plaintiff was unable to identify any discriminatory acts he experienced in November 2019. (DSOMF ¶2.) No other evidence has been shared by Plaintiff to expound on this allegation despite Defendant's request for information as to same. (DSOMF ¶23.) As Plaintiff has failed to identify facts to substantiate a November 2019 ADA violation, T-Mobile requests judgment in its favor as to this claim. *See Ako-Annan v. E. Me. Med. Ctr.*, No. 1:19-cv-00544, 2021 WL 3719240, at *34 (D. Me. Aug. 20, 2021).

**C. Denial of Plaintiff's remote work request in January 2020 did not violate the ADA.**

Plaintiff alleges that T-Mobile discriminated against him by rejecting his request for an accommodation to perform training modules at home. (Complaint ¶ III. E.) To survive summary judgment on his failure to accommodate claim, Lewis must prove that "(1) he was disabled within the meaning of the ADA, (2) he was a qualified individual, and (3) the defendant, despite knowing of the plaintiff's disability, did not reasonably accommodate it." *Flaherty*, 946 F.3d at 55 (citations

omitted.) To be considered a qualified individual under the ADA, an individual must be able to perform the essential functions of the job with or without a reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).  As set forth below, Defendant's denial of Plaintiff's request did not violate the ADA as Plaintiff's request was not reasonable, and Plaintiff refused to engage with T-Mobile as it attempted to determine a reasonable accommodation aside from a leave of absence.

> **1. Plaintiff's requested remote work accommodation removed essential functions from his position and therefore was not reasonable.**

On January 15, 2020, Mr. Lewis, through his healthcare provider, requested an accommodation in the form of remote work. (DSOMF ¶¶31, 33.)  Mr. Lewis, however, could not identify which elements of his job his disability adversely effected, or how his requested remote work accommodation would have enabled him to perform the "essential functions" of his job. This is fatal to his claim, as Plaintiff has the burden to show he proposed an accommodation that enabled him to perform his job and which was feasible to the employer.  *See Mohammadian v. Ciba Vision of Puerto Rico, Inc.,* 378 F. Supp. 2d 25, 30 (D.P.R. 2005) (citing *Kvorjak v. Maine,* 259 F.3d 48, 55 (1st Cir. 2001)).  An "essential function" is one that is "fundamental" to the position.  *Sepulveda-Vargas v. Caribbean Restaurants, LLC*, 888 F.3d 549, 553 (1st Cir. 2018). To determine if a task is "essential" courts must consider "the employer's judgment as to what functions of a job are essential," including the employer's written job description, and "[t]he consequences of not requiring the [employee] to perform the function[,] . . . [t]he work experience of past incumbents in the job[,] and . . . [t]he current work experience of incumbents in similar jobs." *Id.* (internal quotations omitted).  The "inquiry into essential functions 'is not intended to second guess the employer or to require the employer to lower company standards.'"  *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006) (citation omitted). The First Circuit has held that

a remote work accommodation is *per se* unreasonable where physical presence is an essential function of the job. *See Mulloy*, 460 F.3d at 153.

In-person work was an essential function of Mr. Lewis's job in January and February 2020 and as a result, Mr. Lewis's accommodation request would not have enabled him to perform that essential function.[1]   The Coach, TEX job description stated that physical attendance at the T-Mobile Call Center is a "specific physical requirement [] of the job" and the primary tasks of the position further demonstrate the necessity of in-person engagement.   (DSOMF ¶¶3-10); *see Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 77–78 (1st Cir. 2010) (pointing to a written job description's identification of certain tasks as "essential functions" and "primary tasks" as evidence of a job's "essential functions" for accommodation purposes).   T-Mobile's expectation was that all Coach TEXs will be on-site to support their on-site teams during work hours. (DSOMF ¶5.)[2]   TEX Coaches are required to spend more than 50% of their time in interpersonal

---

[1] While Mr. Lewis was on leave in 2019 and 2020 T-Mobile had to allocate Mr. Lewis' work to another employee; which would have had to have continued if Plaintiff's accommodation request were granted.   *See Rios-Jimenez v. Principi*, 520 F.3d 31, 42 n.9 (1st Cir. 2008) (citing *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998) ("If [the employee] can't perform the essential functions of his job absent assigning those duties to someone else . . . then [the employee] can not be reasonably accommodated as a matter of law.")).

Mr. Lewis did not to return to work until April 2020. (DSOMF ¶68.)   In his deposition, Mr. Lewis explained that as of December 2019 when he was not physically present, he was not interacting with his team in any capacity.   (DSOMF ¶60.)   Mr. Lewis not only admitted that he was not performing the core functions of his role as a Coach but explained that when he was "working" remotely (without permission from T-Mobile nor pursuant to an accommodation) another employee was responsible for coaching his team.   (DSOMF ¶¶61, 62.)   Essentially, had T-Mobile granted the accommodation request it would have been necessary to re-write Mr. Lewis' job description to reallocate certain work, which is not required by the ADA. *See Rios-Jimenez*, 520 F.3d at 42 n.9 ("An employer's obligation to make reasonable accommodations does not require the employer to rewrite the essential elements of a job description or to reallocate those functions to other workers.").

[2] T-Mobile's refusal to permit Mr. Lewis to work remotely was consistent with past practices.   T-Mobile had never granted a remote work accommodation for a Coach TEX while the team otherwise worked in person because, as previously discussed, in-person work was an essential function of the position.   Mr. Lewis could not identify any other employees who had

interactions; approximately 25% of a coach's time is dedicated to "providing effective feedback, coaching, and supporting" team members; 10% is spent "provid[ing] meaningful career and professional development for assigned experts; coach[ing] and develop[ing] experts, including inspection and observation of expected behaviors and outcomes; actively engag[ing] in day-to-day activities in the pod and being a trusted resources for experts through in-the-game coaching;" and 20% is spent "[c]oordinating, cooperat[ing], and collaborat[ing] with other coaches." (DSOMF ¶8); *see Mulloy*, 460 F.3d at 152 (holding that physical presence was an essential function of the job where the job description identified "teamwork, troubleshooting, evaluating and training and supporting," which all imply some level of interaction with others).  Mr. Lewis agreed that his position was highly "interactive."  (DSOMF ¶9); *see Sepúlveda-Vargas*, 888 F.3d at 554 (employee's concession that rotating shifts was a core responsibility supported the conclusion the shift schedule was essential).

Mr. Lewis also testified he knew of no Coach TEX who was able to perform their essential duties and functions from home.  (DSOMF ¶34); *see Mulloy*, 460 F.3d at 153 (plaintiff's inability to identify others in the same position who were able to work remotely was evidence physical presence was an essential function of the job).  Because the Coach TEX position required consistent interfacing with others, no reasonable jury could conclude that in-person work was not

---

requested a work from home accommodation to do performance training or any Coach TEXs who could perform their essential duties from home. (DSOMF ¶¶ 34, 39.) Said failure further evidences that Defendant's refusal was reasonable. *See Contra Morin v. Hannaford Bros. Co., LLC*, No. 1:17-CV-50-GZS, 2018 WL 2746570, at *11 (D. Me. June 7, 2018).  T-Mobile's treatment of Mr. Lewis was consistent with its treatment of all other Coach TEXs who necessarily had to attend work in-person, while their team worked in-person, based on the nature of their employment.  *See Sepulveda-Vargas, LLC*, 888 F.3d at 553 (explaining that "[t]he current work experience of incumbents in similar jobs" is relevant in determining whether something is an "essential function"). *Id.*

an essential function of Mr. Lewis' position and judgment in Defendant's favor should be entered as to the failure to accommodate claim.[3]

### 2. Plaintiff's refusal to engage in the interactive process is fatal to his failure to accommodate claim.

On January 22, 2020, Melysa Miles and Karen Estes in T-Mobile's Human Resources Department met with Mr. Lewis and asked him to clarify what he was seeking for an accommodation to which Mr. Lewis replied that he was a veteran who had a disability and wanted to know what T-Mobile was going to do for him. (DSOMF ¶75.) Plaintiff's refusal to participate in the interactive process is fatal to his failure to accommodate claim. A plaintiff is not automatically entitled to the accommodation of his choice and cannot bring a claim for failure to accommodate when he has refused to engage in the interactive process.

Mr. Lewis's opinion was that he was entitled to an accommodation immediately upon submission of his request. (DSOMF ¶41.) Human Resources explained that T-Mobile cannot provide a temporary accommodation while it works through the interactive workplace accommodation process (DSOMF ¶32) and also requested that Mr. Lewis explain what exactly he was seeking as an accommodation (which to this date remains unclear) as he could complete training modules at his discretion. (DSOMF ¶42.) Human Resources further explained to Mr. Lewis that they needed to know what aspect of his position he was having difficulty performing

---

[3] Additionally, while Mr. Lewis at times stated he was only seeking an accommodation to complete non-required training remotely, he was simultaneously not attending work in person. The training modules he sought to complete from home were *not* a prerequisite for Mr. Lewis returning to work as his leave of absence was less than one (1) year. (*See* DSOMF ¶¶36-38.) Plaintiff is further unable to identify other employees who requested a work from home arrangement only to perform non-required (or even required) training. (DSOMF ¶45.) If Mr. Lewis felt he needed additional training he could have completed the training during his shifts while completing his other job requirements, or in the evenings or on weekends as an exempt employee. (DSOMF ¶35.)

and how the accommodation would assist. (DSOMF ¶43.) Mr. Lewis became agitated and insisted that Human Resources was denying his accommodation because they required information from his healthcare provider. (DSOMF ¶44.) Human Resources informed Mr. Lewis that it was not denying his accommodation request but was instead engaging in the interactive process, which required additional information from his and his healthcare provider to understand his needs. (DSOMF ¶45.) Although Ms. Shaw later submitted paperwork, the information was ambiguous, did not provide T-Mobile with sufficient information concerning Mr. Lewis' functional limitations, or how an accommodation would assist him in performing the essential functions of his job. (DSOMF ¶¶49-54.)

"[A]n employer is neither required to provide an employee with an accommodation of [his] choice nor to create a position for that employee." *McDonough v. Brennan*, No. 18-2141, 2019 WL 10887002, at *1 (1st Cir. Sept. 24, 2019) (quoting *Enica v. Principi,* 544 F.3d 328, 342 (1st Cir. 2008)). T-Mobile cannot be held liable simply because it did not grant Mr. Lewis' preferred accommodation. As discussed above, the requested accommodation was not reasonable.

Further, Mr. Lewis' refusal to engage in the interactive accommodation is fatal to his claim. The interactive process under the ADA requires "both the employer and employee to engage in a meaningful dialogue, in good faith, for the purpose of discussing alternative reasonable accommodations." *Ortiz-Martínez v. Fresenius Health Partners, PR, LLC*, 853 F.3d 599, 605 (1st Cir. 2017). "If an employee fails to cooperate in the [interactive] process, then the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations." *Id.*; *see EEOC v. Kohl's Dept. Stores, Inc.,* 774 F.3d 127, 132 (1st Cir. 2014) (if the "employee fails to cooperate in the [interactive accommodation] process, then the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations"). In *Ortiz-Martínez* the First Circuit

15

rejected an employee's failure to accommodate claim because the employee failed to cooperate with the employer in identifying her needs and "meaningfully engage" in identifying a suitable accommodation. 853 F.3d at 606. The First Circuit concluded that the employer had made reasonable attempts to identify a suitable accommodation by clarifying what the employee's needs were and what the employer could do to help, and that no accommodation was ever granted because the employee was uncooperative and unresponsive to such attempts. *Id.; see also Phelps v. Optima Health, Inc.*, 251 F.3d 21, 27–28 (1st Cir. 2001) (concluding that the employer was not liable for failing to grant an accommodation where the employee turned down several suggested alternatives and placed conditions on the accommodation she would accept); *Kerry v. Sun Life Fin. (US) Servs. Inc.*, No. 2:17-CV-376, 2019 WL 206093, at *12 (D. Me. Jan. 15, 2019) (granting summary judgment in favor of the employer where the employee acted unreasonably by refusing to return to work unless the employer granted her accommodation despite the employer's requests that she return and discuss the situation with HR).

Here, the record is clear that Mr. Lewis refused to engage in the interactive process, was insistent that T-Mobile allow him to work remotely without following the appropriate accommodation process, and refused T-Mobile's attempts to clarify his needs. (DSOMF ¶¶41-46, 75). Much like the plaintiff in *Ortiz-Martínez,* Mr. Lewis did not communicate which aspects of his job he was having difficulty performing because of his disability, failed to answer HR's questions about why it was important for him to have an accommodation through January 31, 2020, and was unwilling to communicate what he wanted out of the workplace accommodate process. (DSOMF ¶¶41-46, 75) Similarly, Plaintiff has since acknowledged that the accommodation request paperwork he and his doctor submitted was contradictory. (DSOMF ¶56) Mr. Lewis not only viewed Ms. Shaw's documentation prior to submission, and

agreed that the paperwork was confusing, but admitted that he never made any efforts to clarify documentation or provide an explanation. (DSOMF ¶¶56, 57, 75); *cf. Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 105 (1st Cir. 2007) (an employee has the "obligation to further clarify their needs once the employer offers an accommodation the employee believes is insufficient"). Mr. Lewis's failure to engage in the interactive process or otherwise clarify his accommodation needs is fatal to his reasonable accommodation claim and judgment in Defendant's favor is appropriate.

**D.  Plaintiff's February 2020 leave did not violate the ADA as it was granted pursuant to his doctor's instructions.**

Plaintiff contends T-Mobile violated the ADA when it placed him on an unpaid leave of absence in February 2020.  On February 14, 2020, after T-Mobile deemed Mr. Lewis' work-from-home accommodation request unreasonable and after Mr. Lewis refused to engage in an interactive dialogue to identify an alternative accommodation, T-Mobile placed Mr. Lewis on a continuous leave of absence pending an independent medical examination.  (DSOMF ¶64.)  This leave was identified as a possible accommodation by his healthcare provider.  On December 31, 2019, Ms. Shaw completed a Health Care Provider Questionnaire supporting Plaintiff's request for intermittent time away from work or the ability to work from home when he had a flare up; but that if T-Mobile was unable to accommodate Plaintiff's intermittent leave request, he should be placed on a leave of absence. (DSOMF ¶¶27-29.)  Ms. Shaw indicated that a continuous leave of absence would enable Mr. Lewis to return to work to perform his essential job functions. (DSOMF  ¶30.)  In Ms. Shaw's January 23, 2020 accommodation request submission, she expressly stated that in her professional assessment, there are no other accommodations beyond remote work that would enable Mr. Lewis to perform the essential functions of his job. (DSOMF ¶54.)  Mr. Lewis not only saw this document prior to its submission to T-Mobile but

agreed with this part of the assessment. (DSOMF ¶¶55-56.)  In her attending physician statement dated March 5, 2020, Ms. Shaw stood by her previous recommendation for a leave of absence and answered "yes" to the question: "Did you advise the patient to stop working?" and identified the date of incapacity as "1/3/20." (DSOMF ¶¶66-67.)  Accordingly, as of January 3, 2020, it was Plaintiff's healthcare provider's position that he should not be working.

Plaintiff now claims, however, that the leave of absence was discriminatory in nature. (DSOMF ¶65.)  This leave, however, was pursuant to his healthcare provider's request, and did not violate the ADA.  Based on Ms. Shaw's submission, T-Mobile had reason to believe that a leave of absence was the only *reasonable* accommodation requested.  Plaintiff's request—to work remotely—in January and February 2020 was **unreasonable** as he would be unable to accomplish the essential functions of his position (discussed in detail above).  A leave of absence was the only alternative which would keep Plaintiff employed.

When an employer grants a requested accommodation it meets its statutory duty under the ADA. *See Woodruff v. School Bd. Of Seminole County, Fla.,* 304 Fed. Appx. 795, 800 (11th Cir. 2008); *Gillard v. S. New England Schl. Of Law,* No. 05-10244, 2006 WL 8458257, at *1 (D. Mass. Feb. 3, 2006); *Mohammadian,,* 378 F. Supp. 2d 25, 30 (D.P.R. 2005).

Because Mr. Lewis' remote work accommodation request was unreasonable as a matter of law, as discussed in Section C, T-Mobile appropriately followed his healthcare providers' December 2019 directive to put Mr. Lewis on a leave of absence. Moreover, an unpaid leave of absence is not inherently discriminatory.[4]  Mr. Lewis cannot now claim that T-Mobile engaged in

---

[4] *See Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 128 (1st Cir. 2017); *Watkins v. J & S Oil Co.*, 977 F. Supp. 520, 526 (D. Me. 1997) (citing 29 C.F.R. Pt. 1630 App. (EEOC interpretive regulation to Section 1630.15(b) and (c)) (An employer may, "in appropriate circumstances, have to consider the provision of leave to an employee as a reasonable

discriminatory conduct by acting responsively to the recommendation of Mr. Lewis' own healthcare provider.  Accordingly, judgment in Defendant's favor as to Plaintiff's claim of discrimination in February 2020 is appropriate.

**E.  Plaintiff's termination was unrelated to his disability.**

On April 17, 2020, Mr. Lewis returned to work after T-Mobile approved him to work remotely due to the Covid-19 pandemic. (DSOMF ⁋68.)  On June 29, 2020, T-Mobile eliminated Mr. Lewis' position as part of a reduction in force resulting from a merger with Sprint. (DSOMF ⁋70.)   Plaintiff alleges that T-Mobile's termination decision was discriminatory. Plaintiff's own testimony, however, is that his belief is that his termination was unrelated to his disability, but instead was the result of perceived age and race discrimination.[5] Plaintiff acknowledges that after T-Mobile's merger with Sprint, there was a reduction in the workforce generally and he was told he was terminated due to the merger. (DSOMF ⁋⁋70-71.)

Further, Plaintiff has not produced any direct or circumstantial evidence to support a connection between his termination and his disability. T-Mobile requested that Plaintiff provide: "Any and all documents that you believe support your position that your termination was the result of something other than a reduction in the workforce". (DSOMF ⁋73.) Plaintiff responded, "Not relevant to the disability claim case". (DSOMF ⁋74.)  This supports the testimony Plaintiff provided in his deposition, stating that the only logical conclusion he could come up with regarding why he was terminated was his age and his race.  (DSOMF ⁋72.)  Case law supports judgment in the moving party's favor where a plaintiff's testimony does not support their pleadings.  *See Ross v. Jefferson Cnty. Dept. of Health*, 701 F.3d 655, 661 (11th Cir. 2012)

---

accommodation, unless the provision of leave would impose an undue hardship."); 29 C.F.R. Pt. 1630 App. (EEOC interpretive regulations to Section 1630.2(*o*))).

[5] Defendant notes while this is Plaintiff's perception, there is no evidence supporting this conclusion.

("When asked during her deposition whether she "[felt] like [her] termination had anything to do [with]…[her] race," Ross responded, "no." Based on Ross's unequivocal concession," summary judgment was appropriate.); *see also Geneste v. AGMA, Inc*., No. 12-CV-5801, 2014 WL 5475392, at *7 (E.D.N.Y. Oct. 29, 2014) (granting summary judgment where Plaintiff testified that she was ultimately terminated for reasons unrelated to the purported race, national origin, and age discrimination claims).  Plaintiff is unable to substantiate that his termination was because of his disability and accordingly judgment should be entered in T-Mobile's favor.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant T-Mobile's Motion for Summary Judgment and enter judgment in favor of Defendant as to Plaintiff's claims.

Dated at Portland, Maine this 21st day of October 2022.

Respectfully Submitted,

/s/  *Tawny L. Alvarez*
Tawny L. Alvarez, Esq., Bar No. 5173
Emily C. Waddell, Esq., Bar No. 6601
Verrill Dana, LLP
One Portland Square
Portland, ME 04101
Phone:  207-774-4000
Fax:  207-774-7499
talvarez@verrill-law.com
ewaddell@verrill-law.com
Attorneys for Defendant T-Mobile

21009752_1

## CERTIFICATE OF SERVICE

I certify that on October 21, 2022, I electronically filed Defendant's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system.  I have further sent the Notice to Plaintiff at the below address:

> Calvin Lewis, Jr.
> 6 Hill Street
> Oakland, ME 04963
> calvinljr@aol.com

> /s/  *Tawny L. Alvarez*
> Tawny L. Alvarez, Esq., Bar No. 5173
> Emily C. Waddell, Esq., Bar No. 6601
> Verrill Dana, LLP
> One Portland Square
> Portland, ME 04101
> Phone:  207-774-4000
> Fax:  207-774-7499
> talvarez@verrill-law.com
> ewaddell@verrill-law.com
> Attorneys for Defendant T-Mobile

21030512_1